645 A.2d 474

**BOROUGH OF KENNETT SQUARE**

v.

**Amrit LAL, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 6, 1994.

Decided July 8, 1994.

Reargument Denied Aug. 17, 1994.

Thomas R. Kellogg, for appellant.

John L. Hall, for appellee.

Before COLINS and PELLEGRINI, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Appellant, Amrit Lal, appeals from an order of the Court of Common Pleas of Chester County, sitting in equity, ordering injunctive relief and appointing an agent for Appellant to manage Appellant's apartment complex known as "Scarlett Manor Apartments," in order to bring it into compliance with the Borough of Kennett Square's (Borough) housing and building codes.

This matter commenced in February, 1993 when the Borough filed this action in an effort to bring an end to almost five years of continuous litigation with Appellant. From the time Appellant purchased Scarlett Manor Apartments, in March 1988, when they were apparently in a good state of repair and free of any Housing Code (Code) violations, until December 1993, Appellant was cited for more than 160 Code violations, and the Borough had spent more than $40,000.00 in attorney's fees in this effort to compel Appellant's compliance. As noted by the trial court judge, The Honorable Thomas J. Gavin, who had personally heard more than one hundred (100) cases involving Appellant's rental real estate, "[Appellant] is the

single most litigious person in the history of Chester County." [1] (T.C. Opinion at 5, December 8, 1993.)

According to the trial court, Appellant's obstructive conduct usually conformed to the following pattern:

Following inspections, the borough would communicate deficiencies to the defendant and suggest that he contact the borough regarding the resolution of same. Several months would pass, often with another intervening inspection, but no corrective action taken. More letters would be generated and ultimately defendant would agree to remedy the deficiencies by a date certain. It is important to note that the defendant was always given leeway to select a date by which the repairs, or deficiencies, would be corrected. The corrective date would come and go with no action by defendant, whereupon the borough would issue citations. Hearings would then be scheduled before the district court (District Court 15-3-04) where the defendant would or would not appear to defend. Whether found guilty by the District Justice or *in absentia*, an automatic appeal would be taken to the Court of Common Pleas. By the time the cases found their way to my courtroom the deficiencies, which would now be months if not years old, remained uncorrected. In each case numerous pre-trial motions would be filed, often on the day scheduled for trial, asserting that the court lacked jurisdiction, was biased against the defendant, that the borough was discriminating against defendant because of his third world origin, etc. etc. Ultimately the cases would be heard, appropriate verdicts rendered and plaintiff advised that if the repairs were corrected pre-imposition of sentence, nominal fines would be imposed. Invariably, post-verdict motions would be filed, no corrections made and the defendant sentenced accordingly. Thereafter, motions to vacate sentence and/or appeals would be filed with the deficiencies still uncorrected. The deficien-

1. The trial court noted that Appellant has a Ph.D. and a law degree, and the level of sophistication of his pleadings and his ability to manipulate the rules shows he was not a typical *pro se* litigator. Rather, he was more an unlicensed lawyer of considerable skill. (T.C. Opinion at 6, December 8, 1993.)

cies cited by the borough, by way of example and not limitation, run the gamut from countless vectors (a polite euphemism for cockroaches) scurrying about the apartments to defective and/or leaking and/or missing plumbing fixtures, lighting fixtures that do not work, windows with broken or missing panes, or screens, loose or missing balcony railings, leaking roofs and trash strewn about the properties.

(T.C. Opinion at 2–3, December 8, 1993).

As a result of this delay and vexatious conduct, the Borough filed a complaint asking for the extraordinary remedy of appointment of an agent to manage the apartments and correct the Code violations. In response, Appellant filed preliminary objections which were denied, and Appellant was given leave to file an answer to the Borough's complaint within twenty (20) days. Appellant failed to file an answer within the time allowed, and instead appealed the trial court's denial of his preliminary objections, via a petition for review, to this court. Appellant's petition to vacate Judge Gavin's order denying his preliminary objections was denied by Judge MacElree of the Chester County Court of Common Pleas. Appellant was notified that a default judgment would be taken if he did not file an answer within ten (10) days, and when such answer was not filed, a default judgment was entered and a final hearing to frame an appropriate final decree was scheduled. The final hearing concluded on November 19, 1993, which resulted in the appointment of an agent to manage the apartment buildings in order to correct the problems and bring them into compliance with the Borough's ordinances. Meanwhile, Appellant's legal maneuverings continued with, *inter alia,* a petition to quash the Borough's request for a final hearing to fashion an appropriate final decree, a petition for recusal of Judge Gavin or transfer to another county, continuing requests for production of documents after a protective order had been granted, and a motion to disqualify the court's appointed agent.

On appeal to this Court, Appellant raises eleven issues for our review, three of which have been waived by failure to

raise them in post-trial motions.[2]  Pa.R.C.P. No. 227.1(b)(2); *Estate of Hall,* 517 Pa. 115, 535 A.2d 47 (1987); *Borough Council for Borough of Millbourne v. Bargaining Committee of Millbourne Borough Police,* 109 Pa.Commonwealth Ct. 474, 531 A.2d 565 (1987).  We will therefore consider the remaining issues on their merits.

■ First, Appellant argues that Judge Gavin should have recused because of animosity to Appellant.  Judge Gavin denied the motion stating that his actions do not evince any bias towards Appellant.  (T.C. Opinion at 2, December 17, 1993.)  Like his post-trial motions, Appellant's brief on appeal contains repetitive, generalized, boilerplate allegations of bias and prejudice, but he only indicates one instance which he believes shows the court's animosity, Judge Gavin's threat to hold Appellant in contempt for continuing to cross-examine a witness, Mr. Marguriet, on irrelevant matters.  (R. at 50a.) The record indicates that the first questions Appellant asked on cross-examination of Mr. Marguriet, the Manager and Code Enforcement Officer of the Borough, concerned the deeds of properties owned by other landowners, and a case pending against a property owner in the Borough.  These questions were clearly irrelevant, and such was Judge Gavin's ruling.  Yet, Appellant continued to ask irrelevant questions, until he repeated some he had attempted to ask earlier, and at that point, Judge Gavin warned Appellant to cross-examine only on relevant issues, or risk a contempt citation.  (R. 40a–50a.)  Judge Gavin remained remarkably patient while Appellant asked one irrelevant question after another, but his repeated rulings were ignored.  His warning was therefore warranted, and his threatened use of his contempt powers was entirely proper.

2.  Although Appellant raised more than fifty (50) issues in the trial court he still has waived the following issues: (1) The Building Code of the Borough of Kennett Square was unconstitutional as it bears no reasonable relationship to the health, safety, morals or general welfare of the community; (2) There is no basis for equity jurisdiction because by its inaction the Borough brought about the conditions of which it complains; (3) The Court was in error to exclude certain evidence.

In this jurisdiction, it is presumed that a trial judge is capable of recognizing in himself/herself the symptoms of bias and prejudice. If the judge believes that he or she can hear and dispose of the case without partiality, then that decision will not be overturned, absent an abuse of discretion. *Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority*, 507 Pa. 204, 489 A.2d 1291 (1985); *Commonwealth v. Knight*, 421 Pa.Superior Ct. 485, 618 A.2d 442 (1992). Here, there was no abuse of discretion in warning Appellant that he would be in contempt of court if he continued to ask totally irrelevant questions. Therefore, there is no merit to Appellant's claim that Judge Gavin should have recused.

Next, Appellant claims that the enforcement of the Borough's ordinances was discriminatory against the low income groups which reside in Scarlett Manor and against Appellant, who claims to be a "member of a minority group, being an Asiatic Indian." Appellant not only failed to prove that there was discriminatory enforcement of the Building Code, but has failed to allege any facts which, if true, would support this claim. *Township of Ridley v. Pronesti*, 431 Pa. 34, 244 A.2d 719 (1968); *Harasty v. Borough of West Brownsville*, 50 Pa.Commonwealth Ct. 186, 412 A.2d 688 (1980). We will not recapitulate the facts of this case, but suffice to say that the Borough's ordinances were enforced against Appellant because Appellant had violated these ordinances numerous times, there had been numerous complaints by the tenants and others, and because Appellant engaged in every delaying tactic he knew, including abusing his legal rights, to resist abating the conditions for which he was cited and avoid complying with minimal standards of habitability. (Plaintiff's Exhibit 1 and 3.) Therefore, we find no merit to this argument.

Next, Appellant claims that the court erred in entering a final order in this case before the receipt and consideration of post-trial motions. Pa.R.C.P. No. 227.1. Appellant relies on *Reading Anthracite Co. v. Rich*, 525 Pa. 118, 577 A.2d 881 (1990), where an adjudication and decree nisi were entered which ordered the convening of a meeting within ten (10) days

of entry of the final order, and also invited the parties to submit post-verdict motions within ten (10) days. The petitioners filed their motions on the tenth day, but prior to their receipt the chancellor disposed of the ultimate issue in the case. The Supreme Court held that the petitioners were denied due process when they were denied the right to file exceptions or post-trial motions.

■ This case is readily distinguishable from *Reading Anthracite*. First, although the December 8, 1993 filing was labeled an opinion and order, Appellant had the opportunity and did file post-trial motions which were thoroughly addressed and considered by the trial court. Moreover, the court was not required to enter a decree nisi because a judgment by default had already been entered. *Panther Valley Television Co. v. Borough of Summit Hill*, 372 Pa. 524, 94 A.2d 735 (1953). Thus, *Reading Anthracite* is inapplicable here, and there is no merit to this argument.

■ Next, Appellant claims that the trial court erred in failing to insure that the party intending to purchase the Scarlett Manor was represented at the hearing, and that the tenants were joined as parties. The issue of the necessity of joining the tenants has been waived because it was not raised at the hearing or in post-trial motions. Moreover, notwithstanding Appellant's allegations regarding a potential buyer for his property, the buyer remains unnamed and unproven in the record. When Appellant's attorney, Mr. Kalmbach, was asked about this buyer, he responded that the Borough was more involved in the negotiations for sale than he was. (R. 84.) However, the attorney for the Borough stated that the Borough knew very little about the potential sale, apart from what was told them by Appellant months before. The Borough never saw a copy of the alleged agreement of sale and never knew the name of the alleged, potential buyers. (R. 83–85.) Appellant did not offer any more specific information about the buyers during the hearing, although he was given every opportunity to do so. Instead, he continued to rely on his and his attorney's assertions that the sale was imminent.

(R. 85.) The court cannot join a person or persons in a proceeding when it has not been given information as to the identity of such persons, and when it has received no evidence confirming an interest in the property which would be affected by the court's proceedings. Therefore, there is no merit to Appellant's allegation of trial court error on this issue.

■ Next, Appellant claims that the relief ordered was not a proper exercise of the equitable powers of the court because he made substantial efforts to provide decent housing for the tenants and to comply with the general intent of the ordinance. Appellant cites his own testimony and that of his manager, Mr. Ayra, both of whom the court specifically found not credible. As an example of Mr. Ayra's testimony, he made the incredible statement that perhaps he failed to notice certain Code violations because he made inspections only in the evening. (R. 167a). Although he claimed to have called repair persons to correct the problems, he did not produce a single receipt or cancelled check to prove that they had undertaken the repairs they claimed to have accomplished. As factfinder in the evidentiary hearing, the trial court was free to disregard Appellant's testimony and make findings as to credibility. *Commonwealth v. Nunez,* 312 Pa.Superior. Ct. 584, 459 A.2d 376 (1983). In no uncertain terms, the trial court found Appellant incredible and disregarded the testimony he and Mr. Ayra offered.

Next, Appellant claims that the trial court had an adequate remedy at law, and therefore equitable relief should not have been granted. Citing *School District of West Homestead v. Allegheny County Board of School Directors,* 440 Pa. 113, 269 A.2d 904 (1970), Appellant argues that the trial court had no jurisdiction to consider this action in equity because: (1) there is a constitutionally valid statute, the Borough's citation procedures, which provide an explicit and exclusive administrative remedial process, with review by the Court of Common Pleas; and (2) the statutory remedy is adequate and compliance with the statutory remedy will not cause irremedial harm.

The Borough Code provides that boroughs are specifically vested with the power to enforce housing ordinances by instituting appropriate actions or proceedings in law or in equity. The Borough Code, Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. § 46202(24). Although there are explicit legal and administrative procedures for serving citations for violations of the Borough's housing ordinances, under the Borough Code, they are not the exclusive remedies available to the authorities, and the courts may proceed in equity.

The trial court held that the inadequacy of the available legal remedies was proven by evidence that Code violations continue unabated, notwithstanding the filing of multiple actions by the Borough against Appellant. (T.C. Opinion at 10, December 8, 1993). In explaining this holding the trial court stated, "The borough has tried amicably and legally for five years to compel defendant to meet those minimum standards its other citizens are required to adhere to … If equitable relief is not granted, the borough will continue to be frustrated in its legitimate efforts to enforce its housing codes." (T.C. Opinion at 8–9, December 8, 1993).

Equity has jurisdiction notwithstanding a failure to pursue an available statutory remedy if that remedy is inadequate. While this Court is reluctant to favor equity over administrative remedies, it is appropriate to take equity jurisdiction to avoid a multiplicity of actions. *Temple University v. Department of Public Welfare,* 30 Pa.Commonwealth Ct. 595, 374 A.2d 991 (1977). We hold that the remedies at law, the hundreds of citations for violations of the housing code received by Appellant, have been inadequate to insure their enforcement. Thus, the safety and the habitability of the premises can not be guaranteed, and the health and welfare of the tenants residing in Appellant's apartment complex is endangered. Therefore, it was perfectly appropriate for the court to provide equitable relief in the form of appointment of an agent to manage the Scarlett Manor apartments.

■ Appellant next claims that the court erred in failing to open the default judgment. The decision to open a default judgment is left to the sound discretion of the trial court, which must determine that: (1) the petition to open was promptly filed; (2) there was a reasonable excuse for failure to respond; and (3) a meritorious defense must be shown. *Southeastern Pennsylvania Transportation Authority v. DiAntonio*, 152 Pa.Commonwealth Ct. 237, 618 A.2d 1182 (1992). Appellant cannot meet any part of this test.

■ First, judgment by default for failure to answer the Borough's complaint was entered on September 10, 1993. Appellant did not file his petition to open until December 13, 1993. Although he states he relied on his petition for review of the trial court's dismissal of his preliminary objections, which were filed in this court, to stay the proceedings on the default judgment so that he did not need to file an answer, such reliance was misplaced. Pa.R.A.P. 1701(b)(6) provides that the trial court may proceed further in any matter in which a nonappealable interlocutory order has been entered, notwithstanding the filing of a notice of appeal or a petition for review. Here, Appellant attempted to appeal a nonappealable interlocutory order, which this court dismissed on two different occasions, September 15, 1993 and October 29, 1993, and therefore the trial court properly continued to proceed in this matter while the appeals were pending. Even if we were to accept that Appellant were relying on his petitions for review to stay the proceeding, he still waited for over a month to file his petition to open after his petitions to this Court were dismissed. Thus, the petition to open was not promptly filed, and there is no reasonable excuse for Appellant's failure to respond to the trial court's order to file an answer to the Borough's complaint.

Moreover, as we have discussed, no meritorious defense, which has been defined as a defense sufficient to justify relief if proven, *Id.*, was offered. As discussed above, all Appellant's defenses are without merit and are therefore insufficient to justify relief. Therefore, the trial court did not err in refusing to open the default judgement.

Finally, Appellant claims that the decree should be vacated because the court did not require that the agent appointed by the court to manage Appellant's property post bond pursuant to Pa.R.C.P. No. 1533(d). Rule 1533(d) provides that a "receiver" must give security for the faithful performance of his duty as the court shall direct, and shall not act until the security is paid.

Here, however, an "agent" was appointed, similar to the agent required by the Borough Code, Section 8–107, which requires an owner of any apartment building to register a person to serve as a responsible local agent. Traditionally a person seeking a receiver does so to protect property in which he or she has an interest. *Levin v. Barish*, 505 Pa. 514, 481 A.2d 1183 (1984); *Northampton National Bank of Easton v. Piscanio*, 475 Pa. 57, 379 A.2d 870 (1977).[3] Here, the agent was not appointed to protect the assets of a party which has a property interest in Appellant's property; he was only appointed to manage the property in compliance with local ordinances, as would a responsible local agent. Moreover, the appointment does not divest Appellant of his interest in the property; he retains the power to repair and maintain his property if he so chooses. Therefore, we find no merit to Appellant's claim that the trial court erred in failing to require the agent to post security.

We believe that the repetitious and frivolous nature of this appeal entitles the Borough to the award of reasonable counsel fees pursuant to Section 2503(7) of the Judicial Code, 42 Pa.C.S. § 2503(7) and Pa.R.A.P. 2744(1). *Gossman v. Lower Chanceford Township Board of Supervisors*, 503 Pa. 392, 469 A.2d 996 (1983). Moreover, in *In the Matter of Appeal of Richard Michael George*, 101 Pa.Commonwealth Ct. 241, 515 A.2d 1047 (1986), and *Patel v. Workmen's Compensa-*

---

3. It was held in *DeAngelis v. Commonwealth Land Title Insurance Co.*, 467 Pa. 410, 358 A.2d 53 (1976), that it was improper to appoint a receiver when the party petitioning for such an appointment does not have a lien on the property in question, and only has contract rights to the property which have not been reduced to judgment. Thus, the petitioning party did not have sufficient property rights in the disputed property to force the appointment of a receiver.

*tion Appeal Board (Sauquoit Fibers Co.),* 103 Pa.Commonwealth Ct. 290, 520 A.2d 525, *appeal denied,* 515 Pa. 616, 530 A.2d 869 (1987), we held that we are clearly authorized, under Pa.R.A.P. 2744, to *sua sponte* impose on the appellant the sanction of paying the reasonable counsel fees of the appellee, and while we did not at that time award fees, we held that such abuse of this Court's appeals process may in the future result in the imposition of such sanctions.

Here, Appellant has so clearly abused the legal process that we now impose on Appellant, *sua sponte,* the sanction of paying reasonable counsel fees. This appeal was a result of Appellant's refusal to respond to the Borough's complaint in equity, and instead twice appealing the trial court's preliminary rulings. Then, when Appellant suffered a judgement by default, brought on by his own intentional conduct, he filed this appeal, raising numerous, frivolous issues designed to obstruct and delay the equitable relief ordered by the trial court.

Accordingly, we affirm the trial court's order in its entirety, and remand to the trial court for the calculation of reasonable fees incurred by the Borough in this appeal, to be paid by Appellant.

## ORDER

AND NOW, this 8th day of July, 1994, the order of the Court of Common Pleas of Chester County in the above-captioned matter is affirmed. Further, the case is remanded to the trial court for calculation of reasonable attorney's fees incurred by the Borough in this appeal, to be paid by Appellant.

Jurisdiction relinquished.