## Walker v. Rose

C.P. of Delaware County, no. 92-13877.

*Stanley Gruber,* for plaintiff.
*Edward Griffith* and *James I. Devine,* for defendants.

BRADLEY, *J.,* January 27, 1995—

Plaintiffs appeal from denial of their motion for post-trial relief.

This case was brought by plaintiffs, Kathleen Breslin Walker and her husband, James Walker, against defendants, Albert Rose, D.P.M., Renuka Verma, D.P.M.,[1] and Curt Miller, M.D., in connection with a ruptured Achilles tendon suffered by Mrs. Walker "plaintiff," and a resulting skin slough from the surgical repair of the tendon. Plaintiff's husband, James Walker, asserted a claim against both defendants for loss of consortium.

After a three day trial, the jury on June 30, 1994 returned verdicts in favor of Drs. Rose and Miller and against plaintiffs. The jury found that Dr. Rose's steroid injections were not a proximate cause of plaintiff's tendon rupture and the risk of a skin slough was not a material risk which a reasonable person in the position of the plaintiff would expect to be disclosed by Dr. Miller.

In an order dated October 31, 1994, this court denied plaintiffs' motion for a new trial. This appeal followed.

Plaintiff had been a patient of Dr. Rose's since 1977 and had seen him on prior occasions for the treatment of warts and routine debridement of corns, calluses and nails. On September 8, 1990, plaintiff was seen by Dr. Verma complaining of pain in the right heel region. Dr. Verma diagnosed plaintiff as suffering from

---

1. Dr. Verma was subsequently voluntarily dismissed from the case by stipulation of all parties.

Haglund's deformity and retrocalcaneal bursitis, which is an inflammation of the bursa sac located between the bone and the Achilles tendon. The retrocalcaneal bursa is located "in front of" the Achilles tendon.

On September 8, 1990, Dr. Verma injected plaintiff's right retrocalcaneal bursa with a steroid. Dr. Verma subsequently administered two more steroid injections to plaintiff's right retrocalcaneal bursa on September 13, 1990 and December 17, 1990. During each of the injections, Dr. Verma passed the needle through plaintiff's Achilles tendon in order to reach the retrocalcaneal bursa.

On February 12, 1991, plaintiff was seen by Dr. Rose with the same complaints of pain in the right heel region. Despite receiving three steroid injections from Dr. Verma, plaintiff advised Dr. Rose that Dr. Verma had given her only two steroid injections.

February 12, 1991, Dr. Rose injected plaintiff's superficial adventitious bursa with a long-acting steroid, Teredex-LA. Unlike the retrocalcaneal bursa, the superficial adventitious bursa is located between the Achilles tendon and the skin and is posterior to the tendon. On April 15, 1991, Dr. Rose administered a second injection to plaintiff's superficial adventitious bursa. However, on that occasion Dr. Rose used a shorter-acting steroid, Celestone. Unlike Dr. Verma, Dr. Rose did not pass the needle through plaintiff's Achilles tendon in either of his two injections of plaintiff's superficial adventitious bursa.

On June 6, 1991, plaintiff was seen by Dr. Miller, complaining of right heel pain. Dr. Miller diagnosed plaintiff as suffering from Achilles tendinitis and recommended cast immobilization for the plaintiff. Plaintiff advised Dr. Miller that she did not want to be placed in a cast. Therefore, plaintiff was given crutches and

ace wraps and put on a program of icing and stretching the Achilles tendon. Unfortunately, plaintiff continued to suffer from pain and was placed in a short leg cast by Dr. Miller on June 29, 1991. On July 18, 1991, at plaintiff's request the cast was removed.

In August 1991, plaintiff suffered a ruptured Achilles tendon while walking down steps. On August 30, 1991, plaintiff was admitted to the hospital for surgical repair of the tendon by Dr. Miller. Dr. Miller's operative report identified the location of the rupture as occurring at the musculotendinous junction.

The musculotendinous junction is higher on the Achilles tendon than the superficial adventitious bursa injected by Dr. Rose.

Following the surgery to repair the tendon, plaintiff developed a "skin slough" over the medial aspect of the incision. A skin slough is an area of the skin which becomes necrotic and cannot heal. This was corrected in March of 1992 by a skin graft.

Plaintiffs' complaint against Dr. Rose alleged that Dr. Rose was negligent in administering the steroid injections and that his alleged negligence was proximate cause of Mrs. Walker's Achilles tendon rupture. Plaintiffs also asserted a claim against Dr. Rose for lack of informed consent for his alleged failure to explain to Mrs. Walker the risks associated with steroid injections. Plaintiffs' claim against Dr. Miller was that he failed to advise Mrs. Walker that a skin slough was a material risk of the surgical procedure used by Dr. Miller to repair her Achilles tendon.

Plaintiffs' motion for post-trial relief raises six bases for a new trial. We will address these seriatim.

First, plaintiff alleges the court erred by granting Dr. Rose's motion in limine and refusing to admit certain

portions of Dr. Miller's deposition testimony regarding a December 30, 1991 addendum to his office notes. In that addendum, Dr. Miller stated:

"The weakness and subsequent problems this patient [plaintiff] had are directly related to multiple cortisone injections which were done elsewhere prior to seeing me. Multiple injections of cortisone in the Achilles tendon are contraindicated and can lead to rupture." Plaintiffs' brief in support of motion for new trial at exhibit 12.

The addendum itself as well as any reference to it, including a reference to it in a hypothetical posed to plaintiff's expert, Dr. Bruce R. Heppenstall during his videotape deposition, were also excluded.

Both defendants objected to the admission of the above evidence relying on *Jistarri v. Nappi,* 378 Pa. Super. 583, 549 A.2d 210 (1988) wherein the Superior Court held that a co-defendant doctor cannot be compelled over his objection to give expert opinion testimony against another co-defendant doctor. In *Jistarri,* a co-defendant doctor was not compelled over his objection, to give his expert opinion that the source of a fatal infection was a staph infection which entered Mrs. Jistarri's blood stream through the ulcer under her cast. This expert opinion in the form of deposition testimony obviously implied negligence on the part of his co-defendants who were responsible for her care while in a cast. The deposition testimony did not go to the deponent's own liability because he treated Mrs. Jistarri after the systemic infection had developed, but rather improperly addressed the liability of his co-defendant doctors.

The present case is identical to *Jistarri.* Plaintiff sought to read Dr. Miller's deposition testimony which related to the alleged negligence of Dr. Rose. Dr. Miller

objected to the admission of the opinion testimony in his deposition against Dr. Rose. As the facts of the instant case are identical to the facts in *Jistarri,* we granted Dr. Rose's motion in limine and excluded that part of Dr. Miller's deposition relating to the alleged negligence of Dr. Rose.

Plaintiff attempts to distinguish the present case from *Jistarri* on several grounds, none of which are sustainable. First and foremost, plaintiff seeks to discredit the holding in *Jistarri* because it was a two to one decision of the Superior Court (Wieand, J. dissenting). Plaintiff advocates adopting the dissenting opinion of Judge Wieand because "[t]here are numerous factors specified [therein] which should persuade this court that the Pennsylvania Supreme Court would not adopt the majority opinion in *Jistarri.*" Plaintiffs' brief, p. 34. Despite plaintiff's reservations about *Jistarri,* obviously we are bound thereby.

Plaintiff argues that the objectionable portions of the deposition and the contents of the addendum are factual testimony, thus the proscription of *Jistarri* does not apply. Dr. Miller testified that he dictated the addendum to his office notes some months after the operation and in response to a note from plaintiff that Dr. R. Bruce Heppenstall would be continuing with plaintiff's post-operative follow-up. When asked by plaintiff's counsel at the deposition why he waited until December 30, 1991 to add this addendum if he found out about the prior cortisone injections in August 1991 he answered:

"A. Because during this dictation I thought it was an important fact that needed to be included in the office record." Plaintiffs' brief at exhibit 8, p. 98.

On the strength of Dr. Miller's characterization of his answer as a fact, plaintiff claims the objectionable

addendum is purely factual. However, just a few lines later in the same deposition the following exchange takes place:

"Mr. Gruber: ... The weakness and subsequent problems this patient had are directly related to multiple cortisone injections which were done elsewhere prior to seeing me.

"That was your opinion at that time, correct?

"Dr. Miller: ... My opinion at that time was yes, that the problem with multiple cortisone shots in a ... in and around the Achilles tendon can predispose to rupture of the tendon and skin healing problems." Plaintiffs' brief, exhibit 8, p. 98.

We agree with defendants that plaintiff's suggestion, that merely because Dr. Miller believed his addendum was factual deems it factual, is disingenuous given plaintiff's counsel's later statement that it was opinion and Dr. Miller's subsequent confirmation that it was his opinion. In our view, Dr. Miller's addendum and his deposition testimony relating thereto is unquestionably opinion testimony. He is expressing his medical opinion as to the cause and effect relationship between steroid injections and plaintiff's Achilles tendon rupture.

Plaintiff further asserts that this case is distinguishable from *Jistarri* because Dr. Miller was the only medical expert who had a firsthand opportunity to observe the location of the rupture thus his testimony was absolutely essential on the issue of proximate cause relating to the alleged negligence of Dr. Rose. Plaintiff argues essentially that if the jury had the benefit of hearing the deposition testimony and the addendum, they would not have concluded that Dr. Rose's negligence was not a substantial factor in causing the injury to plaintiff.

This purported distinction is likewise unavailing. As in *Jistarri,* plaintiff produced the expert testimony of Drs. Chairman and Heppenstall on the issue of a causal relationship between Dr. Rose's steroid injections and the Achilles rupture. Moreover, both plaintiff's experts based their opinion on Dr. Miller's operative records, which clearly indicated that the rupture occurred at the musculotendinous junction which is higher than where the injections were given by Dr. Rose. Further, Dr. Miller's deposition testimony concerning the location of the rupture was read during the trial by plaintiff's counsel to one of plaintiff's experts, Dr. Chairman.

Finally, plaintiff attempts to circumvent the holding in *Jistarri* by asserting that Dr. Miller waived any right to object to plaintiff's attempt to introduce his opinion testimony against Dr. Rose by "voluntarily" placing the December 30, 1991 addendum in his office notes. She offers no legal authority for this proposition. Also, plaintiff does not offer any reason why the addendum should be treated differently than the deposition testimony, particularly if the result of not concluding they are identical for purposes of *Jistarri* would mean the addendum is admitted while the same deposition testimony is excluded. To exclude a deposition but admit an office note appears to be elevating form over substance especially if it is the substance, *i.e.,* impermissible evidence, which is legally objectionable.

It is for all the above reasons that we find the present case governed by *Jistarri.* The use of Dr. Miller's deposition testimony and addendum is impermissible over Dr. Rose's objection.[2]

---

2. This court also excluded a reference to the addendum in a hypothetical posed to plaintiff's expert, Dr. R. Bruce Heppenstall, during his videotape deposition. Plaintiff has not offered any reason

Next, plaintiff asserts it was reversible error when the court granted Dr. Rose's motion and refused to instruct the jury on lack of informed consent against Dr. Rose.

In Pennsylvania, the doctrine of informed consent is limited to those cases involving surgical or operative procedures. *Boyer v. Smith,* 345 Pa. Super. 66, 72, 497 A.2d 646, 649 (1985). This doctrine is grounded in battery. In *Wu v. Spence,* 413 Pa. Super. 352, 605 A.2d 395 (1992), the court refused to expand this doctrine to include administration of therapeutic drugs reasoning that although a touching occurs when a drug is administered intravenously, it is not the lack of consent in regard to the administration of the drug which is at issue. It is the failure to disclose potential side effects of the drug which forms the basis for lack of consent. Thus, since no harm is done by the touching itself, the informed consent doctrine is inapplicable. *Accord, Malloy v. Shanahan,* 280 Pa. Super. 440, 421 A.2d 803, (1980); *Boyer v. Smith, supra.*

Although plaintiff attempts to distinguish the present case from *Spence,* the notes of testimony reveal that plaintiff is clearly claiming injury caused by the action of a drug. Plaintiff's real complaint is with the alleged deleterious side effect, *i.e.,* weakening of a weight bearing tendon caused by the use of crystallized steroids. She presented no evidence that the insertion of the needle itself by Dr. Rose on the two occasions when he administered injections caused her any injury. Accordingly, under *Spence,* we declined to instruct the jury on lack of informed consent against Dr. Rose.

why this should be treated any differently than the deposition testimony and addendum nor can we ascertain any. Accordingly, we believe this also falls under the holding in *Jistarri* and thus was properly excluded.

Plaintiff also argues in the alternative that we should adopt a negligence theory rather than a battery theory as the standard for lack of informed consent. Although this has been argued before, see *Spence, supra* at 354, 605 A.2d at 395, the decision whether or not to make such a change in the law is not within the province of this court.

Next, plaintiffs assert that the jury's "no" answer to special interrogatory number 3 was against the weight of the evidence and resulted in a miscarriage of justice. That interrogatory read: "Would a reasonable person in the circumstances of the plaintiff Kathleen Breslin Walker as of August 30, 1991, have considered the risk of a skin healing problem/skin slough material in her decision of whether to undergo surgery for the repair of the ruptured Achilles tendon?"

Concededly, plaintiffs did not specify the above alleged error as a basis for relief in their motion for a new trial. Although failure to raise an issue by post-trial motion normally results in waiver of that issue, *Borough of Kennett Square v. Lal,* 165 Pa. Commw. 573, 645 A.2d 474 (1994), we agree with plaintiffs that the issue should not be considered waived for that reason because of extenuating circumstances. Plaintiffs' counsel was hospitalized immediately after trial. Moreover, plaintiffs briefed this issue in a memorandum of law in support of a motion for new trial thereby enabling Dr. Miller to respond to it by memorandum and in oral argument.

However, there is a more compelling reason than the above why this issue has been waived. Plaintiffs claim absolute shock at the jury's finding that a skin slough

was not a material risk. If the jury's decision on that interrogatory was, as plaintiffs aver, shocking and absolutely contrary to the weight of the evidence, plaintiffs were duty bound to raise that before the court while the jury was still impaneled after its verdict. Plaintiffs did not so object.

As the court in *Picca v. Kriner,* 435 Pa. Super. 297, 302-303, 645 A.2d 868, 871 (1994), stated:

"The main purpose of the familiar waiver rule announced in *Dilliplaine [v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974)] and recently interpreted by *[Philadelphia Police Dept. v.] Gray* [534 Pa. 467, 633 A.2d 1090 (1993)] is to avoid holding new trials through timely, specific objections which give the trial judge an opportunity to recognize errors and correct them. When a party seeks a new trial because the jury returned an inconsistent, irrational, incredible or otherwise problematic verdict, *Dilliplaine* would logically require that the party point out the verdict problems to the trial judge before the jury is dismissed. That way the judge can explain to the jury why its verdict is problematic and that judgment cannot be entered upon it. The jury can then resume deliberations in light of the court's corrective instructions and return an error free verdict...."

Assuming plaintiffs can surmount the hurdle of the waiver rule, they still have not demonstrated that the jury's decision on interrogatory number 3 was against the weight of the evidence. They claim that the jury heard evidence from Mrs. Walker, Dr. Miller and plaintiffs' expert, Dr. Heppenstall, that clearly revealed the development of a skin slough to be a complication of Achilles tendon repair

surgery. They claim the only evidence to the contrary is that relied on by Dr. Miller's counsel in his summation, namely, that plaintiff had testified that although she knew there was a risk of death if she had the surgery, she consented nonetheless, because, "I preferred to be dead than to live with the pain any longer." N.T., June 27, 1994, at p. 205.

Plaintiffs argue that by finding a skin slough was not a material risk, the jury must have determined that plaintiff would have had the surgery even were she not informed of it as a material risk, a consideration not permitted by informed consent law. This argument totally misconstrues the jury's findings. Persuaded by the defense, the jury determined that any reasonable person in plaintiff's circumstances having excruciating, long-term pain would not have considered the risk of a skin slough as significant or material in deciding whether to undergo the surgical repair of her Achilles tendon. As the verdict does not shock one's sense of justice, we find it would have been a gross abuse of our discretion, were we to grant a new trial on this issue.

Plaintiff's final argument is that the court erred in refusing to charge Pennsylvania Suggested Standard Jury Instruction (Civ.) 10.07 in its entirety.

Pennsylvania Suggested Standard Jury Instruction (Civ.) 10.07 reads as follows:

"A medical malpractice case is a civil action for damages and nothing more. The sole issue is whether the plaintiff has suffered injuries as the result of the defendant's negligence, and is thus entitled to monetary compensation for those injuries. *The case does not involve punishment*

*of the defendant, or even criticism of his professional abilities, beyond the facts of this matter. The claim does not involve the defendant's reputation, his medical practice, or his rights as a licensed physician. Therefore, no thought should be given to these irrelevant considerations in reaching a verdict in the case."*

Point number 6 of plaintiffs' requested charges is essentially identical to standard charge 10.07. The emphasized part of the above instruction is what was omitted from the court's charge.

In charging the jury, the court stated:

"Now, a medical malpractice case again is a civil action for damages and nothing more. The sole issue for you to decide in this case is whether the plaintiff has suffered injuries as a result of the negligence of defendant Albert Rose and/or the performance of an invasive procedure by Dr. Miller without obtaining her informed consent and whether or not the—with respect to all of these issues and depending upon your determination with respect to the issues of liability as to Dr. Rose and/or Dr. Miller, whether the Walkers are entitled to damages which I will describe to you, and it only involves monetary damages and that should be your only concern with respect to determining the issues in this matter." N.T., June 30, 1994 at pp. 15-16.

Plaintiffs argue that once the court undertakes to read a portion of a suggested jury instruction, it is reversible error to refuse to read the entire instruction. No support is given for this proposition and indeed, it is contrary to well-established law. See *Butler v. Kiwi, S.A., infra.* Furthermore, plaintiffs speculate that absent the instruction

that the case did not involve the reputation, medical practice or rights as licensed physicians of either Dr. Rose or Dr. Miller, the jury allowed those irrelevant considerations to impact on their verdict against plaintiffs.

The court is not required to read verbatim any Pennsylvania Suggested Standard Jury Instruction even where a party specifically requests the court to use them. *Butler v. Kiwi, S.A.,* 412 Pa. Super. 591, 597, 604 A.2d 270, 273 (1992), *alloc. denied,* 531 Pa. 650, 613 A.2d 556 (1992). The court is free to fashion its instructions as it sees fit, "provided the charge fairly and accurately apprises the jury of the relevant law and guides the jury in its deliberations." *Id.* In the instant case the jury was informed that the case only "[i]nvolves monetary damages and that should be your only concern with respect to determining the issues in this matter." Furthermore, at the very end of the charge, the jury was instructed:

"[y]ou should not allow sympathy or prejudice to influence your deliberations. You should not be influenced by anything other than the law that I have given to you and the evidence in the case which you find credible and have given weight, issue or issues towards the determination that you will have to make in determining the verdict in this matter.

"All the parties stand equally before the court and as each is entitled to the same fair and impartial treatment at your hands. Issues are now for you to resolve and you may retire to the jury room to reach a verdict." N.T., June 30, 1994, at p. 54.

Taken as a whole, we believe the instructions accurately apprised the jury of the relevant law and guided the jury

in its deliberations. In our view, the instruction was not erroneous. The jury was told to examine the evidence presented, apply the law as told to them and not let extraneous factors influence their verdict. Moreover, it is only mere speculation that the jury considered the impact on the defendant doctors of an adverse verdict and therefore rendered a verdict in their favor. "An erroneous jury instruction may provide the basis for a new trial if it is shown that the instruction was fundamentally in error and that it may have been responsible for the verdict." *Soda v. Baird,* 411 Pa. Super. 80, 87, 600 A.2d 1274, 1278 (1991), *alloc. denied,* 532 Pa. 665, 616 A.2d 986 (1992). We believe there was no fundamental error in the charge given for the reasons expressed above. Moreover, besides mere speculation, there is no evidence to indicate that a reason for the defense verdict was the decision not to charge Pennsylvania SSJI 10.07 in its entirety. In our view, the jury fairly and accurately evaluated the facts as presented to them, applied the applicable law and rendered a fair and just verdict.

It is for all the reasons set forth above that we denied plaintiffs' motion for a new trial.