### Amrit LAL

### v.

### BOROUGH OF KENNETT SQUARE, et al.

### Civil Action No. 95–7938.

United States District Court, E.D. Pennsylvania.

July 25, 1996.

Michael B. Yulsman, Abington, PA, for Plaintiff.

Mark L. Tunnell, John L. Hall, West Chester, PA, Sean Roberts, Philadelphia, PA, for Borough of Kennett Square, Kenneth Roberts as President of the Borough Council, J. McCarthy, C. Merrick, M. Piergalline, J. Scalise, T. Zunino, C.S. Cramer, Mayor, Doughlas, Margueriet, Borough Manager, Charles Warner, Code Enforcement Official, Albert McCarthy, Chief of Police, John L. Hall, Associate Solicitor, Mark Tunnell, Assistant Solicitor and John Halstead, Solicitor.

C. Robert Elicker, Jr., West Chester, PA, for Government of Chester County, Joe Kenna, A. Dinniman, and K. Martynick, Commissioners.

Howard M. Holmes, Philadelphia, PA, for Marita Hutchinson, Property Manager and The Honorable Thomas Gavin.

Patricia M. Hamill, Philadelphia, PA, for Joseph R. Pitts, Legislative Representative from Kennett Square.

## MEMORANDUM AND ORDER

DITTER, District Judge.

In this action the plaintiff claims civil rights, RICO, and state law violations by a borough, a county, their officials, a state legislator, a common pleas court judge, and a court-appointed property receiver. The case arises out of Plaintiff Amrit Lal's failure to comply with numerous municipal housing code provisions during his ownership and operation of two apartment buildings in Kennett Square, Pennsylvania.

■ Lal's failure to comply resulted in several criminal and civil sanctions. Between 1988 and 1995, he was investigated, charged, prosecuted, convicted, and fined for hundreds of housing code violations occurring at the apartment buildings. In December, 1993, in a civil equity proceeding in state court, Chester County Court of Common Pleas Judge Thomas G. Gavin took control of the buildings from Lal and appointed a receiver to operate them. Judge Gavin also presided over many of the criminal prosecutions of Lal. The Pennsylvania Commonwealth Court affirmed several of Lal's criminal convictions and Judge Gavin's order in the civil equity proceeding. *See Borough of Kennett Square v. Lal*, 665 A.2d 15 (Pa. Cmwlth.1995); *Borough of Kennett Square v. Lal*, 165 Pa.Cmwlth. 573, 645 A.2d 474, *appeal denied*, 540 Pa. 613, 656 A.2d 119 (1994); *Borough of Kennett Square v. Lal*, 164 Pa. Cmwlth. 654, 643 A.2d 1172, *appeal denied*, 540 Pa. 586, 655 A.2d 517 (1994).[1]

Lal now has filed an original complaint asserting claims under 42 U.S.C. § 1983 and an amended complaint adding other claims, including one under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* He names as defendants the Borough of Kennett Square, its mayor, police chief, solicitors, housing code inspector, and council members, Judge Gavin, the receiver appointed to operate the apartment buildings, Chester County and several of its commissioners, and the borough's state representative.

In Count I, Lal alleges that the borough and its officials violated his federal constitutional rights by investigating, charging, and prosecuting him for criminal violations of the housing code. In Count II, Lal contends that Pennsylvania State Representative Joseph Pitts violated his rights by pressuring the borough to adopt policies which discriminated against him and by preventing consideration of his requests for federal and state money to renovate the apartment buildings. In Count III, Lal claims that Judge Gavin and Marita M. Hutchinson, Esquire, the court-appointed receiver, violated his rights during the civil equity proceeding. In that count, Lal also contends that Judge Gavin violated his rights during the criminal prosecutions. In Count IV, Lal alleges that all of the defendants improperly interfered with the operation of his business and a contract

---

1. I may consider these published opinions and other public records related to them in deciding this motion to dismiss. *Cf. Oshiver v. Levin,* *Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n. 5 (3d Cir.1994).

to sell the buildings, failed to manage the buildings properly, and did not consider his requests for funds to renovate them. Finally, in Count V, Lal contends that the defendants' actions violated RICO.

For the following reasons, I will grant the defendants' motions to dismiss. In summary, the requests for money damages against Judge Gavin must be dismissed because judicial immunity protects him from suit. The claims relating to Lal's criminal convictions must be dismissed because they are not cognizable in a section 1983 action. Finally, I will dismiss Lal's remaining claims because, under the *Rooker–Feldman* doctrine, I do not have subject matter jurisdiction to hear them. Also, Judge Gavin, the borough, and the borough's officials filed motions for sanctions. Because I conclude that Lal's complaint was filed for the improper purpose of harassing the defendants, and is not warranted by existing law or a nonfrivolous argument for its extension or reversal, I will grant the motions and sanction Lal.[2]

## I. *THE MOTIONS TO DISMISS*

■ Along with other relief, Lal seeks punitive, compensatory, and "exemplary" damages against Judge Gavin for actions he took in the civil and criminal proceedings in state court. The doctrine of judicial immunity requires that I dismiss those claims with prejudice.[3]

■ A judge may only be sued for money damages when one of two circumstances is present: either when the actions complained of are not "judicial acts" or when the judge acts in the clear absence of all jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 356–57, 98 S.Ct. 1099, 1104–05, 55 L.Ed.2d 331 (1977). Because judges must feel free to act without fear of incurring personal liability for their

actions in court, judicial immunity remains in force even if the actions are alleged to be legally incorrect, in bad faith, malicious, or corrupt. *Mireles v. Waco*, 502 U.S. 9, 11–12, 112 S.Ct. 286, 287–288, 116 L.Ed.2d 9 (1991).

■ Lal contends that Judge Gavin is not immune from suit because his actions were not judicial and because he acted without jurisdiction. Lal's arguments are frivolous. First, what Judge Gavin did was clearly judicial. "Whether an act by a judge is a 'judicial' one relates to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.* whether they dealt with the judge in his judicial capacity." *Waco*, 502 U.S. at 12, 112 S.Ct. at 288. Judge Gavin's actions—his appointing Hutchinson, prohibiting Lal from interfering with the operation of the buildings, directing Hutchinson not to pay certain obligations, and trying, convicting, and sentencing Lal for criminal violations—are clearly normally performed by judges. *See, e.g., Waco*, 502 U.S. at 12–13, 112 S.Ct. at 288–289 (court order directing court officers to bring attorney before court is judicial act); *Stump*, 435 U.S. at 351, 359–60, 98 S.Ct. at 1101–02, 1106–07 (ordering mildly retarded woman to undergo sterilization procedure judicial act). Indeed, all of the actions of which Lal complains may *only* be performed by judges.

Moreover, Judge Gavin's actions also appeared judicial, lending further support to the fact that the parties believed they were dealing with the judge in his judicial capacity. The actions occurred either in written orders or in a courtroom, at a judicial hearing, while the judge was on the bench, in open court, and with all the interested attorneys or parties present. Lal complained of several of those actions in at least three

---

2. In his complaints, Lal makes allegations relating to events occurring between 1988 and 1995. (*See* Comp. ¶¶ 12, 49). However, in his response to the defendants' motions to dismiss, he states that "[t]his case concerns a series of events which occurred during 1994, 1995 and continue to occur through 1996." (Lal's Resp. to Mot. to Dismiss at 1; *see also id.* at 23). I will construe this to mean that he no longer intends to assert claims relating to events occurring prior to 1994, consider those causes of action abandoned, and will dismiss them. Even if Lal did not abandon

those claims, I would dismiss them for the reasons stated in this opinion.

3. Although Judge Gavin is not immune from Lal's claims for declaratory and injunctive relief or attorneys fees, they must be dismissed either as violative of the *Rooker–Feldman* doctrine or because they are not cognizable under section 1983. *See Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

different appeals. Given those circumstances, there is no doubt that the parties dealt with Judge Gavin in a judicial capacity and not, for example, as an employer or administrator.

Second, Pennsylvania law plainly gave Judge Gavin jurisdiction to take these actions. Title 42 Pa.C.S. § 931(a) provides that "the courts of common pleas shall have unlimited original jurisdiction of all actions and proceedings, including all actions and proceedings by law and usage in the courts of common pleas." As far as the civil equity proceeding is concerned, Pennsylvania law makes clear that equitable relief exists when there is not an adequate remedy at law. *See Lal*, 645 A.2d at 479. Judge Gavin's actions were within this broad grant of jurisdiction. Indeed, in the related state court litigation, the commonwealth court specifically held that in light of Lal's outrageous conduct and repeated failure to abide by the housing code, granting equitable relief in this case was properly within Judge Gavin's jurisdiction. *Id.* At most, Lal's allegations amount to a charge that the judge committed legal error which is not sufficient to void judicial immunity. *Stump*, 435 U.S. at 359, 98 S.Ct. at 1106. The fact that Lal now characterizes the takeover of his property as a "de facto condemnation" does not affect this conclusion.

■ Lal's argument that Judge Gavin acted without jurisdiction has even less application to the criminal proceedings. There is no dispute that Lal was charged with numerous violations of borough ordinances and that Judge Gavin fined him within the range specifically allowed by those ordinances. Allegations that Judge Gavin conducted the proceedings in an unconstitutional manner, even were they true, would not divest the Chester County Court of Common Pleas of jurisdiction. Such actions, even had they been legally incorrect, would not void Judge Gavin's immunity. *See Stump*, 435 U.S. at 359, 98 S.Ct. at 1106. Thus, because the allegations in Lal's complaints, if true, do not establish that Judge Gavin's actions were not judicial or that he acted in the clear absence of all jurisdiction, I must dismiss with prejudice

Counts III–V to the extent that they seek money damages from Judge Gavin.

■ Lal also claims that his criminal convictions were obtained in violation of his federal constitutional rights. Because Lal's state convictions are presently valid, the claims involving them are not cognizable in a section 1983 action and will be dismissed with prejudice. *See Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

In *Heck*, the plaintiff, a convicted state prisoner, filed a section 1983 action against the law enforcement officers who conducted the investigation leading to his prosecution and conviction. The plaintiff sought monetary damages alleging that the defendants destroyed exculpatory evidence, caused an illegal voice identification, and conducted an unlawful and arbitrary investigation. At the time he filed suit, the plaintiff's direct appeal of his conviction was pending. The trial court dismissed the complaint and the United States Supreme Court affirmed, holding that section 1983 does not permit a claim, which if decided in the plaintiff's favor, would necessarily imply the invalidity of a presently-in-force state court conviction. Thus, the Court held, in order to state a proper section 1983 claim relating to an allegedly unconstitutional conviction or "for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a plaintiff must allege that his conviction was overturned on appeal, expunged by executive order, declared invalid by a state tribunal empowered to do so, or called into question by a federal writ of habeas corpus.

In his complaints Lal alleges that the defendants violated his right to equal protection by selectively enforcing the housing code against him because of his race and national origin, (*see* Comp. ¶¶ 18–20, 36; Amend. Comp. ¶¶ 16(a), (b), 25(a), 28(a), 35(a), 40(a), 55(c)); that the convictions violated his right to procedural due process, (*see* Comp. ¶¶ 20–28, 30; Amend.Comp. ¶¶ 17(a), 25(a), 32(a), 40(a), 45(a), 54(b)); and that he was punished in violation of the Eighth Amendment's excessive fines clause. (*See* Comp. ¶ 31). He does not allege that any of his convictions have been invalidated.

■ Lal's prevailing on the claim that his convictions resulted from violations of his federal constitutional rights would necessarily imply the invalidity of those convictions. Similarly, a finding in his favor on the claim that he was excessively fined in violation of the Eighth Amendment would necessarily imply that his sentence was illegal. There is simply no other way to construe Lal's complaint: it seeks damages for injuries caused by allegedly unconstitutional criminal convictions and sentences, which are still presently in force.[4] For that reason, Lal's claims that his state court convictions and sentences violated his federal constitutional rights, which are stated in Counts I, III, and IV, are dismissed with prejudice.[5]

Remaining are Lal's claims that various defendants violated his federal constitutional rights in the civil equity proceeding, interfered with his business and a contract to sell the apartment buildings, improperly operated the buildings, did not consider or blocked consideration of his requests for funds to renovate his buildings, adopted and pressured borough officials to adopt discriminatory housing ordinances, and violated RICO. Because the *Rooker–Feldman* doctrine precludes subject matter jurisdiction of those contentions, I must dismiss with prejudice the remaining claims in Counts I–V.

■ The *Rooker–Feldman* doctrine provides that a federal district court does not have subject matter jurisdiction to review a state court judgment or hear claims "inextricably intertwined" with that judgment. *See Dist. of Columbia Court of Appeals v. Feld-* *man,* 460 U.S. 462, 476, 103 S.Ct. 1303, 1311–12, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust,* 263 U.S. 413, 415–16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923). The United States Court of Appeals for the Third Circuit construes the doctrine to preclude federal district court review of a judgment of both a state's highest and lower courts. *Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of New York and New Jersey Police Dep't,* 973 F.2d 169, 178 (3d Cir.1992).

A claim is "inextricably intertwined" with a state court judgment if, in order to find in the plaintiff's favor on the claim, the federal court would have to conclude that the state court wrongly decided the issues before it or would otherwise have to void the judgment. *Centifanti v. Nix,* 865 F.2d 1422, 1430 (3d Cir.1989) (*quoting Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 25, 107 S.Ct. 1519, 1533, 95 L.Ed.2d 1 (1987) (Marshall, J. concurring)). Principles of claim preclusion will bar a litigant from suing in federal court if he had a full and fair opportunity to litigate his causes of action in the state court proceedings. *Guarino v. Larsen,* 11 F.3d 1151, 1157 (3d Cir.1993); *Valenti v. Mitchell,* 962 F.2d 288, 296 (3d Cir.1992).

■ In December, 1993, Judge Gavin entered an order in the civil equity proceeding taking control of the apartment buildings from Lal and appointing Hutchinson to operate them. Lal strenuously opposed entry of the order and, during the proceedings, raised 50 objections. Lal appealed that order to the Pennsylvania Commonwealth Court, raising eleven grounds he claimed required its vaca-

---

**4.** I note that even if I construed Lal's complaints as an application for a writ of habeas corpus under 28 U.S.C. § 2254, I would dismiss them because he does not allege that he is "in custody" within the meaning of the statute or that he exhausted his state remedies.

**5.** Even if *Heck* did not bar these claims, the allegations in ¶¶ 16, 20, 22, 23–25, 27, and 30–33 of the original complaint and ¶¶ 16(a), (b), and 32(a) of the amended complaint must be stricken as to borough prosecutors John L. Hall, Mark Tunnell, and John Halstead. In those paragraphs, Lal complains of actions the prosecutors took either in court or in deciding to charge him with certain crimes. Because they involve "initiating and presenting the [borough's] case," the actions of the prosecutors are absolutely immune from suit under section 1983. *See Burns v. Reed,* 500 U.S. 478, 492, 111 S.Ct. 1934, 1942–43, 114 L.Ed.2d 547 (1991); *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 994–95, 47 L.Ed.2d 128 (1976). The fact that those defendants are employed by a municipality and not a state does not preclude application of absolute immunity. In *Burns* and *Imbler,* the Supreme Court sought to prevent prosecutors from being distracted, and potentially crippled, by civil lawsuits. Allowing lawsuits against prosecutors would disrupt the performance of their duties by requiring them to make decisions in light of possible suits and divert their attention away from prosecuting defendants. Accordingly, the employer of the prosecutor is completely irrelevant to the concerns expressed by the Supreme Court.

tion. Given the scope of the hearings and the sheer number of issues Lal raised in state court, I conclude that he had a "full and fair opportunity" to litigate all relevant issues in those proceedings. The issues raised included Lal's contention that Judge Gavin was biased against him and should have recused himself, that the borough's enforcement of its ordinances was motivated by racial and ethnic animus toward him and his tenants, and that the judge improperly granted equitable relief and committed other procedural errors. *Lal,* 645 A.2d at 476–80. The commonwealth court rejected every one of those arguments. Therefore, in order to grant the relief Lal seeks in this case, I would have to conclude that the state court erred in deciding those issues. The *Rooker–Feldman* doctrine precludes my doing so.

Lal claims that because he did not appeal Judge Gavin's February 10, 1995, and September 21, 1995, orders in the civil equity proceeding, I have subject matter jurisdiction to review them. According to Lal, those orders forbade him from being present at the apartment buildings and directed Hutchinson not to pay the mortgage on them. Lal's argument is meritless because the *Rooker–Feldman* doctrine precludes my review of the decisions of the lower state courts, *Port Auth.,* 973 F.2d at 178, and nothing prevented Lal from challenging those orders there.

All of the other claims are similarly barred by the *Rooker–Feldman* doctrine. In order to grant relief on those claims, I would have to conclude that the state courts were wrong. Lal either raised those issues in state court or had a full and fair opportunity to do so. Indeed, he claimed more than 50 errors in the state court civil equity proceeding before Judge Gavin, 11 on appeal of that decision in the commonwealth court, and numerous others in his criminal cases. For that reason, all of Lal's claims not specifically raised in state court are inextricably intertwined with the state court judgment and my review of them would violate the *Rooker–Feldman* doctrine.

## II. *THE MOTIONS FOR SANCTIONS*

Judge Gavin, the borough, and the borough's officials also move for sanctions under Federal Rule of Civil Procedure 11. They assert that Lal filed this suit to harass them in retaliation for their legitimate attempts to enforce the borough's housing code and that his claims are clearly frivolous. The defendants point out that the defenses barring Lal's complaints are obvious, well settled, and that Lal knew or should have known as much when he filed this lawsuit.

■ I find that Lal's original and amended complaint violate Rule 11(b)(2) because, as I have explained, the defense of judicial immunity, the *Rooker–Feldman* doctrine, and the Supreme Court's holding in *Heck v. Humphrey* clearly and definitively bar all of Lal's claims. Further, Lal makes no objectively reasonable factual or legal argument for the reversal or abandonment of these defenses or that they do not apply in this case. I also find that Lal violated Rule 11(b)(1) because he filed the complaint for the improper purpose of harassing the defendants. He did so to retaliate against them for their legitimate attempts to enforce the borough's housing code. Accordingly, I will order that Lal be sanctioned.

Pursuant to Rule 11(b), an individual filing a complaint certifies that it is not being filed for an improper purpose and that the claims in it are warranted by existing law or a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. Parties violating Rule 11(b) may be sanctioned. Fed. R.Civ.P. 11(c). In 1993, Rule 11 underwent significant amendments, but its overriding purpose remained the same—to deter the filing of frivolous lawsuits or those filed for improper purposes. *See Simmerman v. Corino,* 27 F.3d 58, 64 (3d Cir.1994) (purpose of pre-amendment rule is deterrence); Fed. R.Civ.P. 11 advisory committee's note explaining 1993 amendments (sanctions should be calculated to deter abuse).

■ Rule 11(c)(2)(A) prohibits a district court's awarding monetary sanctions against a represented party for a violation of Rule 11(b)(2). That restriction does not prevent imposition of such sanctions in this case, even though Lal is presently represented by counsel, because he personally drafted and signed the original and amended complaints and was

acting *pro se* when he filed them with the court. I conclude, therefore, that Lal personally made the certifications required by Rule 11(b) and that Rule 11(c)(2)(A) does not apply.[6]

Trial courts should consider the following factors in deciding whether to impose sanctions against a party for a violation of the rule:

Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants.

Fed.R.Civ.P. 11 advisory committee notes. Use of these factors is appropriate in this case and an analysis of several of them strongly supports the imposition of sanctions against Lal.

First, Lal's bringing suit was clearly intentional. There is no claim that his doing so resulted from some negligent legal research or an honest mistake about the holdings in the relevant cases. To the contrary, Lal continues to assert his claims even after the defendants filed the motion for sanctions and there is substantial evidence that he had a clear understanding of the defenses barring his complaint.

In 1994, Lal filed a *pro se* complaint against the Pennsylvania Board of Law Examiners, its members and staff, and the justices of the Pennsylvania Supreme Court because they refused to admit him to the state bar. *See Lal v. Nix, et al.,* 935 F.Supp. 578 (E.D.Pa.1996). That case is assigned to me. During its pendency, Lal demonstrated his knowledge of the *Rooker–Feldman* doctrine

and of the Supreme Court's holding in *Heck.* He referred to the *Rooker–Feldman* doctrine on several occasions and discussed it in several papers filed with the court. Further, a month before the filing of the instant suit, in a November 13, 1995, opinion, I explained that the *Rooker–Feldman* doctrine barred federal district court review of state court judgments and claims inextricably intertwined with them.

Lal cited *Heck v. Humphrey* several times in papers he filed. (*See, e.g.,* Pltf.'s Mot. for Recons. (document # 24) at 1; Pltf.'s Mem. in Supp. of Mot. for Recons. (document # 30) at 9; Pltf.'s Mot. for Recons. (document # 35) at 3). In my order denying a motion for reconsideration filed by Lal, I explained that *Heck* barred the filing of a section 1983 action seeking compensation for injuries relating to a state criminal conviction unless the conviction had been invalidated. (*See* Ord. at ¶ 3).

Lal also was aware of the existence and scope of the doctrine of judicial immunity because the defendants in *Lal v. Nix* asserted it, discussed it at length, and pointed out several relevant cases. The fact that Lal filed this lawsuit and refused to withdraw it even though he knew that these defenses barred his claims establishes Lal's willful violation of the rules.

Second, the present violation is part of a pattern of abusive conduct by Lal. In state court litigation relating to this dispute, Lal has been sanctioned twice, *see Lal,* 665 A.2d at 20; *Lal,* 645 A.2d at 481, and at least one other time in an unrelated case. *See Lal v. West Chester Area School District,* 100 Pa. Cmwlth. 70, 513 A.2d 1152 (1986). As evidenced by the filing of this lawsuit, those sanctions have not convinced Lal to conduct himself properly.

Third, because, as I explained, all of the claims in the original and amended complaints are barred by obvious and well-settled defenses known to Lal, his rule violations infected the entire proceeding.

---

**6.** After filing his complaint, Lal retained counsel who entered his appearance at a May, 1996, status conference. The sanctions imposed are not the result of any of the conduct of Lal's present counsel.

Fourth, Lal is no ordinary *pro se* litigant. He claims he has a law degree and a Ph.D. and has been a party to countless lawsuits spanning approximately 18 years.[7] In some of that litigation, he represented himself. *See, e.g., New York Guardian v. Brokenborough,* 394 Pa.Super. 105, 575 A.2d 121 (1990); *West Chester Area School Dist.,* 513 A.2d at 1152; *Lal v. Moyerman,* 257 Pa.Super. 637, 390 A.2d 309 (1978). Further, in his other case before me, Lal contended he was worthy of admission to the bar. Given his asserted knowledge of both procedural and substantive law, including the defenses explicitly and definitively barring his claims, and his litigation experience, his status as a *pro se* litigant in no way mitigates his improper behavior.

Finally, Lal has the financial resources to pay the sanctions I impose. He has the means to own at least two apartment buildings, which he agreed to sell for $1.35 million, (comp. ¶ 56), is employed as a college professor, and has the education and skills to earn substantial amounts of money. Accordingly, only a relatively heavy sanction will deter future abuses by Lal and other similarly situated litigants.

 In summary, because Lal's claims are not warranted by existing law or any nonfrivolous argument for its extension, modification or reversal and because he filed this lawsuit to harass the defendants, he has violated Rule 11(b)(1) and (2). For those violations, I will order Lal to pay the reasonable attorneys fees and costs incurred by the borough, its officials, and Judge Gavin in defending this lawsuit. I will also order Lal to pay a fine to the court of $1,500—$100 for each of the 15 defendants seeking sanctions. These sanctions are to punish Lal for his egregious conduct, including his refusal to cease his improper behavior even after being previously sanctioned, and to deter future violations by him and others.

---

**7.** Lal was involved in litigation at least as early as 1978. *See Borough of West Chester v. Lal,* 35 Pa.Cmwlth. 620, 387 A.2d 929 (1978).