**Mark SATO and Laura Sato**

v.

**Paul E. PLUNKETT, et al.**

**No. 94 C 60.**

United States District Court, N.D. Illinois, E.D.

March 15, 1994.

Mark Sato, pro se.

Laura Sato, pro se.

Edward A. Scott, Jr., South Holland, IL, for Ray Bayster, Leona Kwasny and Walter Kwasny.

Eileen Marutzky, U.S. Atty., Chicago, IL, for Mark Koosey and Edward Burns.

## OPINION

EASTERBROOK, Circuit Judge.[†]

Some litigants refuse to accept defeat. On they wade, naming the judges and lawyers in the prior case as additional defendants in an ever-widening conspiracy.

Mark Sato is such a person—and he finds it easy to believe that the judges who rule against him are malefactors, for he seems to think that *everyone* is in cahoots with the forces of evil. The complaint in this case accuses Presidents Bush and Clinton of treason, asserts that the Anti–Defamation League of B'nai B'rith is involved with the Mossad and Bank Leumi in a "treasonous" scheme to launder money, and alleges that Fidel Castro has exposed "the deep involvement of the Chicago mob in the assassination of President John F. Kennedy." Complaints in earlier cases assert that a "Vatican/P–2/Mafia" conspiracy is responsible for most of the world's ills. (The complaint in this case says that "P–2" is "an Italian/Catholic Masonic organization originally formed under the influence of British Masons" and may include "high officials in the Mormons"). For some of Sato's judicial sallies, all of which have been dismissed, see *Sato v. Katz*, 1994 WL 72260, 1994 U.S.Dist. LEXIS 2600 (N.D.Ill.); *Skolnick and Sato v. Doria*, 1994 WL 63044, 1994 U.S.Dist. LEXIS 1766 (N.D.Ill.); *Sato v. Kwasny*, 1993 WL 498339, 1993 U.S.Dist. LEXIS 16870 (N.D.Ill.) (and earlier proceedings in the same case, reported at 1993 WL 460842, 1993 U.S.Dist. LEXIS 15693, 1993 WL 413953, 1993 U.S.Dist. LEXIS 14549, 1993 WL 157461, 1993 U.S.Dist. LEXIS 6402); *Sato v. Federal Emergency Management Agency*, 1991 WL 10036, and 1991 WL 94052, 1991 U.S.Dist. LEXIS 814 and 6949 (N.D.Ill.); *Sato v. Tabor*, 579 F.Supp. 1170 (N.D.Ill.1983). Sato does not appeal from his defeats; instead he files new litigation. This is one such endeavor. It names as defendants the original parties to the *Kwasny* litigation, adding District Judge Plunkett, who ruled against him. The *Kwasny* litigation was itself a follow-on suit, naming as defendants the state judge and lawyers involved in a probate case, *In re Estate of Antonia Kwasny*, No. 91 P 011245 (Cir.Ct. Cook County 1992), that did not come out as Sato had hoped.

Mark Sato has been before the court as defendant, too. He failed to file tax returns and was ordered to pay back taxes. See *United . States v. Sato*, 704 F.Supp. 816 (N.D.Ill.1989) (and additional proceedings reported at 1990 WL 70482, 1990 U.S.Dist. LEXIS 5467, 90–1 T.C. ¶ 50,278; 1990 WL 186399, 1990 U.S.Dist. LEXIS 15584). Sato's belief that the sixteenth amendment to the Constitution does not exist, and that the national government therefore lacks the power to collect income taxes without apportionment among the states, led his father Joseph Y. Sato to grief. As the court of appeals reported when affirming Joseph Sato's conviction for tax offenses:

> For fifteen years prior to the 1982 tax year, [Joseph Y.] Sato dutifully filed federal income tax returns and usually without incident. In the years 1978 through 1981, Sato's son, Mark, prepared Sato's tax returns, which included deductions for the "Sato Family Trust." These deductions became the focus of IRS audits. The trust deductions were disallowed and the IRS notified Sato of additional taxes due. ... Sato failed to file tax returns for the 1982, 1983 and 1984 tax years. At trial on criminal charges of willful failure to file tax returns ... Sato offered as a principal theory of defense that he relied on his son's advice with respect to tax matters and, therefore, the government could not prove Sato "willfully" failed to file.

*United States v. Sato*, 814 F.2d 449, 450 (7th Cir.1987). The jury, and ultimately judges of both the district court and the court of appeals, rejected Joseph Sato's defense. Per-

---

[†] Of the Seventh Circuit, sitting by designation.

haps this accounts for Mark's antipathy toward the federal judges of Illinois. Since that decision Mark has accused the entire federal judiciary of running a " 'Dope Underground,' an illegal narcotic drug dealing organization which operated throughout the [federal] buildings and involves virtually all the federal judges and/or their personnel in Chicago," of receiving extra pay through offshore accounts (apparently with the aid of Cardinal Joseph Bernardin), and of taking bribes. According to the complaint in this case, Judge Plunkett is "the chairman of the bribery committee for federal judges of 7th Circuit."

Judge Alesia, to whom this latest complaint was assigned, recused himself because a fellow judge was among the defendants. The chief judge of the circuit designated me to hear cases in the district court, and the Executive Committee of the district court then transferred the case to me so that decision could be rendered by a judge who is not a colleague of any defendant.

■ Judge Plunkett has moved to dismiss the complaint, asserting judicial immunity. See *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Nothing in the complaint alleges that Judge Plunkett has acted adversely to plaintiffs other than in a judicial capacity, and within his jurisdiction. Being chairman of a "bribery committee" would not be within a court's jurisdiction, but the complaint does not allege any connection between this supposed "office" and injury to the plaintiffs.

■ Anticipating that Judge Plunkett would assert judicial immunity—as so many other targets of Sato's complaints have done—the complaint asserts that Judge Plunkett is biased against Sato and that his "failure to disqualify himself voided the defense of judicial immunity". This is wrong on multiple grounds. First, Judge Plunkett's only acquaintance with Sato is as a judge, and performance of judicial tasks is not disqualifying unless the judge reveals a deep-seated antagonism as opposed to a judgment formed on the basis of information he is entitled to consider. *Liteky v. United States*, — U.S. —, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). As the Court observed, the sort

of "bias" or "prejudice" that leads to disqualification connotes "a favorable or unfavorable disposition or opinion that is somehow *wrongful* or *inappropriate*, either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess (for example, a criminal juror who has been biased or prejudiced by receipt of inadmissible evidence concerning the defendant's prior criminal activities), or because it is excessive in degree (for example, a criminal juror who is so inflamed by properly admitted evidence of a defendant's prior criminal activities that he will vote guilty regardless of the facts). The 'extrajudicial source' doctrine is one application of this pejorativeness requirement to the terms 'bias' and 'prejudice' as they are used in §§ 144 and 455(b)(1) with specific reference to the work of judges." *Id.* at —, 114 S.Ct. at 1155 (emphasis in original). Second, failure to recuse oneself is a judicial act. An error in deciding whether one is qualified to sit remains an exercise of judicial authority, which therefore may not lead to damages. A person aggrieved by a judicial officer's decision to sit rather than to recuse himself may obtain relief by appeal or petition for mandamus. Sato took neither route; a demand for damages is not a third way to test the correctness of a judge's interpretation of 28 U.S.C. §§ 144 and 455.

■ Judge Perivolidis, who presided in the probate case in state court, also seeks dismissal on the basis of judicial immunity. This request is equally sound. Judge Perivolidis adds that Mark Sato's claims against him were resolved by Judge Plunkett, so that claim preclusion (res judicata) provides a further defense. Perhaps anticipating this, Laura Sato, Mark's wife, has joined this case as a plaintiff. But Laura Sato was a party to the state case, and she is barred from contesting its outcome, directly or indirectly, by the *Rooker–Feldman* doctrine. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); see also, e.g., *GASH Associates v. Village of Rosemont*, 995 F.2d 726 (7th Cir.1993). That is to say, the only federal court authorized to

inquire into the correctness of the decision of a state court in civil litigation is the Supreme Court of the United States. Laura Sato litigated and lost in state court; a suit naming the judge is not a way around the principle that federal courts do not entertain collateral attacks on state judgments.

■ The remaining seven defendants, some of whom have not been served with process, have yet to answer the complaint. Lack of service is not the only problem; some of these persons (such as James B. Burns, newly named as United States Attorney for the Northern District of Illinois) have no apparent connection to anything that happened to plaintiffs; others are private actors who cannot be sued under either 42 U.S.C. § 1983 or a *Bivens* theory, and who therefore appear to be outside the jurisdiction of the court. (We do not have complete diversity of citizenship; all parties appear to be citizens of Illinois.) Moreover, the complaint fails to identify any claim fitting a legal theory of which I am aware.

■ Because Fed.R.Civ.P. 8 establishes a system of notice pleading, I cannot (yet) exclude the possibility that plaintiffs can establish a claim. But before I take steps toward resolution of whatever legitimate dispute plaintiffs may have with the remaining seven defendants, I shall put this litigation on hold while Mark Sato satisfies one of his legal obligations.

After Judge Plunkett identified several failings in the federal version of the *Kwasny* litigation, he permitted Sato to amend his complaint. Sato paid no attention to the order, filing documents even wilder than before and providing prime illustrations of the "fantastic or delusional scenarios ... with which federal district judges are all too familiar." *Nietzke v. Williams,* 490 U.S. 319, 328, 109 S.Ct. 1827, 1833, 104 L.Ed.2d 338 (1989). See also *Denton v. Hernandez,* —— U.S. ——, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). Judge Plunkett imposed sanctions under Fed.R.Civ.P. 11, explaining that "[a]t some point, our solicitous treatment of pro se litigants must be trumped by our concern with the rights of Defendants to be free of scandalous, repetitive, and baseless claims that undoubtedly drain their financial and emo-

tional resources." *Sato v. Kwasny,* 1993 WL 498339, 1993 U.S.Dist. LEXIS 15693 at *10 (Nov. 5, 1993). The order concludes: "Sanctions are imposed against Mr. Sato in the amount of five hundred ($500) dollars, payable to the Clerk of the Court within ten (10) days."

According to the complaint in this case—which reiterates the allegations already found to be baseless, repetitive, and sanctionable—Sato has no intention of paying. He denies the authority of the court to sanction him and believes that there are better uses of his money. He also denies the authority of the court to dispose of litigation adversely to him—witness not only the complaint in this case but also the fact that even after being sanctioned Sato filed in *Kwasny* still another complaint, which led Judge Plunkett to write:

> These "Unsworn Declarations" [in Sato's latest pleading, which] ... make outrageous allegations against dozens, if not hundreds, of prominent citizens that are almost certainly libel per se, including claims of corruption, murder, organized crime ties, homosexual liasons, and treason, are the most extreme example of 'immaterial, impertinent, or scandalous matter," Fed.R.Civ.P. 12(f), ever before this Court. We strike them sua sponte.

*Sato v. Kwasny,* 1993 U.S.Dist. LEXIS 16870 at *5 (Dec. 1, 1993). The court dismissed the remainder of the litigation. Sato did not appeal—not from the dismissal, not from the sanctions. Nonetheless, plaintiffs renew the allegations in the current complaint.

Mark Sato appears to be unable or unwilling to accept an adverse judgment of a court. Presumably he expects the defendants to accept the judgment if they should be held liable. Yet there can be no victory for any party in litigation unless there is also defeat. Anyone who files suit in hope of winning must accept the possibility of losing. Unless both sides are equally bound, the process is futile. Mark Sato litigated and lost—and that means he lost. He was ordered to pay a sanction of $500. Instead of doing so, he has thumbed his nose at the judicial process (and at the judge, personally). That approach will not be tolerated.

Until Sato pays the $500 sanction, no further proceedings will be had in this case. If the sanctions are not paid within 30 days, I will treat this as abandonment of the litigation and will enter judgment dismissing the complaint with prejudice.

I am not impressed by the possibility, at which the complaint hints, that Sato is unable to pay the sanctions. Plaintiffs paid the $120 docket fee to begin this case. (Had they not done so, I would have dismissed the complaint summarily under 28 U.S.C. § 1915(d).) Sato's tax litigation suggests that any claim of inability to pay would not be worthy of credence. At all events, authorization to proceed *in forma pauperis* under § 1915 does no more than excuse *pre* payment of costs. See *McGill v. Faulkner,* 18 F.3d 456 (7th Cir.1994). It does not authorize any person to continue in a course of vexatious litigation without regard to the losses imposed on others (including the judicial system). By postponing the reckoning of costs to the end of the case, § 1915 gives an impoverished litigant *one* free bite, not more. Mark Sato has had many bites at the apple; now he must pay.

I will instruct the clerk of the district court to accept no further complaints from Mark Sato, whether or not the docket fee has been prepaid, until Sato has satisfied all outstanding sanctions imposed against him.

Sato should be aware that if he *does* pay, and thus reactivates this case, he will be required to show why further sanctions should not be imposed for continuing a pattern that has already been branded frivolous. Rule 11, as amended effective December 1, 1993, is designed to deter frivolous suits and tactics. Both general and specific deterrence are at issue—general deterrence because the prospect of sanctions prevents persons from commencing frivolous cases (or raising frivolous defenses) and specific deterrence because it is necessary to put a stop to abusive tactics. Sato has informed the judicial system that a sanction of $500 is not enough to get him to stop. Very well. I will find a sanction that *is* sufficient. The sanction is not limited to the amount of defendants' costs. It may be as high as necessary to achieve the required result, and if Sato insists that that is very high indeed, I am willing to accommodate him.

What is more, the judicial system is entitled to protect itself against litigants who abuse its processes. Mark Sato has identified himself as such a person. If monetary sanctions will not do the job, other means must be found. One appropriate device is the injunction: the court requires the litigant to submit all documents to a judicial officer for review before filing. Those not accepted are returned by the clerk, preventing harassment of the defendants and any need for substantive rulings by the court. See *In re Martin–Trigona,* 9 F.3d 226 (2d Cir.1993) (collecting authorities). Mark Sato is on notice: any further abuse of the judicial process will lead to the entry of such an injunction.

The court now enters the following orders:

1. The complaint is dismissed with prejudice to the extent it names Judges Plunkett and Perivolidis. No amendment of the complaint concerning these defendants will be entertained.

2. Further proceedings are stayed pending Mark Sato's payment of all sanctions outstanding against him. If the sanctions have not been paid within 30 days, the complaint will be dismissed.

3. The clerk of the district court is instructed to return, unfiled, any new complaint tendered by Mark Sato until he has satisfied all outstanding awards of sanctions.