Susan I. SHEPHERDSON

v.

The Honorable Russell NIGRO.

No. CIV. A. 97–5504.

United States District Court, E.D. Pennsylvania.

May 13, 1998.

Rosemarie Rhodes, Philadelphia, PA, for Plaintiff.

Howard M. Holmes, Administrative Office of Pennsylvania Courts, Philadelphia, PA, for Defendant.

## MEMORANDUM

WALDMAN, District Judge.

This is a 42 U.S.C. § 1983 action. Plaintiff claims that while serving as a Philadelphia Common Pleas Judge, defendant violated her federal constitutional rights when he ruled, adversely to plaintiff, on a summary judgment motion in a lawsuit she had filed against her former employer, Local Union No. 401 of the International Association of Bridge Structural & Ornamental Ironworkers. The essence of plaintiff's claim is that

Justice Nigro was constitutionally required to recuse himself because at the time the summary judgment motion was decided he had accepted significant campaign contributions from members of the law firm that filed the motion on behalf of Local Union No. 401. She asserts a claim for violation of her due process rights under "the Fifth Amendment."

Presently before the court is defendant's motion to dismiss plaintiff's complaint. Defendant argues that plaintiff's claim is barred by the "Rooker–Feldman" doctrine, that plaintiff has failed to state a claim upon which relief can be granted and that defendant has absolute judicial immunity.[1]

A motion to dismiss for failure to state a cognizable claim tests the legal sufficiency of a claim accepting the veracity of the claimant's allegations. *See Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990); *Sturm v. Clark*, 835 F.2d 1009, 1011 (3d Cir.1987). A complaint may be dismissed when the facts alleged and the reasonable inferences therefrom are legally insufficient to support the relief sought. *See Pennsylvania ex. rel. Zimmerman v. PepsiCo., Inc.*, 836 F.2d 173, 179 (3d Cir.1988).[2]

The pertinent factual allegations in the complaint are as follow.

Plaintiff filed a complaint in the Philadelphia Court of Common Pleas captioned *Susan I. Shepherdson v. Local Union No. 401 of the International Association of Bridge Structural & Ornamental Ironworkers*, June Term 1993, C.C.P. 1825. On May 19, 1995, Local Union No. 401 filed a motion for summary judgment which was assigned to ·then Judge Nigro for adjudication. At that time, defendant was a candidate for election to the Pennsylvania Supreme Court.

Local Union No. 401 was represented by Francis McDevitt, a partner in the law firm of Naulty Scaricamezza & McDevitt. Between January and May 1995, members of the firm made contributions totaling $10,600 to defendant's primary election campaign fund. From May through October 1995, firm members contributed an additional $10,500 to his general election campaign fund. Defendant is a "longtime" friend of Angelo Scaricamezza, a partner in the firm.

On August 28, 1995, then Judge Nigro issued a one sentence order granting Local Union No. 401's summary judgment motion. On November 27, 1995, shortly after his election to the Pennsylvania Supreme Court, he issued a written opinion explaining the reason for the order granting summary judgment. At the time he issued the order and the opinion, he was aware that he had received. significant campaign contributions from members of the law firm representing Local Union No. 401. Defendant recused himself in another case pending during the campaign in which a party was represented by Naulty Scaricamezza & McDevitt.

Plaintiff contends that defendant's failure to recuse himself in her case violated "her right to have her state court action adjudicated in the absence of favoritism, prejudice and bias." Plaintiff claims that the failure to recuse "warrants the imposition of an award of compensatory damages."[3]

Under the *Rooker–Feldman* doctrine, the court lacks subject matter jurisdiction to review a state court decision in a judicial proceeding or to adjudicate federal claims inextricably intertwined with that decision. *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996). The doctrine applies only when the court cannot grant the relief requested with-

---

1. Defendant also contends that any claim plaintiff has stated is barred by the two year statute of limitations.

2. The Fifth Amendment, of course, does not apply to the conduct of state or local officials. *See Bartkus v. Illinois*, 359 U.S. 121, 124, 79 S.Ct. 676, 678–79, 3 L.Ed.2d 684 (1959); *Knoetze v. U.S.*, 634 F.2d 207, 211 (5th Cir.1981), *cert. denied*, 454 U.S. 823, 102 S.Ct. 109, 70 L.Ed.2d 95 (1981); *Shoemaker v. City of Lock Haven*, 906

F.Supp. 230, 237–38 (M.D.Pa.1995). Because plaintiff could amend her complaint to assert a claim under the Fourteenth Amendment, the court will address her due process claim and will not dismiss her complaint on that basis.

3. In her complaint, plaintiff also asserted claims for declaratory and injunctive relief. In her brief, however, plaintiff states that she "withdraws" those claims.

out determining that the pertinent state court judgment was erroneous or taking action that would render it ineffectual. *Id.; Charchenko v. City of Stillwater,* 47 F.3d 981, 983 (8th Cir.1995); *Liedel v. Juvenile Court of Madison County, Ala.,* 891 F.2d 1542, 1545 (11th Cir.1990).

■ Plaintiff argues that the *Rooker–Feldman* doctrine is inapplicable because she does not seek a review of the state court decision and has not claimed the decision was wrong, but only that defendant's failure to recuse himself deprived her of the "right to an unbiased judge." It may fairly be argued that federal relief premised on a finding that a state court judgment was entered in violation of the constitutional right to due process would impair that judgment, if not literally render it ineffectual. On the other hand, a cogent argument can be made that a claim that a defendant involved in a state court decision violated some cognizable right independent of the merits of the decision is not barred *per se* by the *Rooker–Feldman* doctrine. *See Nesses v. Shepard,* 68 F.3d 1003, 1005 (7th Cir.1995). To establish injury, however, the plaintiff would have to show that the violation of such an independent right caused an erroneous adverse decision to be made and this is precluded by the *Rooker–Feldman* doctrine. *Id.* (§ 1983 plaintiff alleging use of political influence by lawyers to obtain decision dismissing his suit cannot show injury unless decision was erroneous). Plaintiff has not shown the deprivation of such an independent constitutional right or a compensable injury.

■ Plaintiff argues that there is an independent right to an impartial decisionmaker which is protected by procedural and substantive due process. Plaintiff cites and relies on six cases in which the Courts indeed discuss the right of litigants to a fair trial before an unbiased tribunal.

These cases, however, do not hold that there is an independent actionable right to an impartial decisionmaker. They merely stand for the unremarkable proposition that an award or judgment rendered by a biased or partial decisionmaker may be vacated. *See Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 827–28, 106 S.Ct. 1580, 1588–89, 89 L.Ed.2d

823 (1986) (participation of judge with direct substantial pecuniary interest in decision incompatible with due process and "proper remedy" is vacatur and rehearing before impartial tribunal); *Commonwealth Coatings Corp. v. Continental Casualty Co.,* 393 U.S. 145, 150, 89 S.Ct. 337, 340, 21 L.Ed.2d 301 (1968) (failure of neutral arbitrator to disclose close financial relationship with litigant which included rendering of services on very projects involved in dispute warrants vacatur of arbitration award under § 10 of the federal Arbitration Act); *In re Murchison,* 349 U.S. 133, 138–39, 75 S.Ct. 623, 626–27, 99 L.Ed. 942 (1955) (reversing criminal contempt convictions by judge who also initiated charges while acting as "one man grand jury"); *Anderson v. Sheppard,* 856 F.2d 741, 747–48 (6th Cir.1988) (reversing judgment and remanding for new trial where judge who directed verdict against plaintiff displayed evident bias and refused his request for reasonable time to obtain new counsel when his lawyer withdrew on eve of trial); *U.S. v. Conforte,* 457 F.Supp. 641, 659 (D.Nev.1978) (recognizing that personal bias of judge against criminal defendant could warrant new trial); *In re Medrano Diaz,* 182 B.R. 654, 661–62 (D.Puerto Rico1995) (debtor seeking to vacate judgment for alleged bias of bankruptcy judge).

In none of these cases did the Court hold that the litigant who is denied an impartial tribunal has an independent claim for money damages against the judicial officer or anyone else.

■ The right to a fair hearing and to an impartial decisionmaker are quintessential procedural rights. A denial of such rights is thus generally viewed as implicating procedural due process. *See Rogin v. Bensalem Township,* 616 F.2d 680, 693–94 (3d Cir. 1980), *cert. denied,* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981). *See also, Complaint of Bankers Trust Co.,* 752 F.2d 874, 886–87 (3d Cir.1984); *Redding v. Fairman,* 717 F.2d 1105, 1112 (7th Cir.1983).

There is in any event no abstract federal constitutional right to due process. The due process clause of the Fourteenth Amendment only prohibits the states from depriving a

person of life, liberty or property without due process of law. Fair process is a means to an end. "Process is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983). *See also, U.S. v. Jiles*, 658 F.2d 194, 200 (3d Cir.1981) (federal procedural due process rights not implicated absent deprivation of life, liberty or property); *Sachetti v. Blair*, 536 F.Supp. 636, 641 (S.D.N.Y.1982) (no federal due process right independent of deprivation of life, liberty or property). As noted, plaintiff does not allege or even contend that the decision rendered in her case by Justice Nigro was erroneous. Thus, accepting that one has a property right to obtain compensation for a tort recognized by state law, plaintiff has not shown that she was deprived of such a right in this case. *See Nesses*, 68 F.3d at 1005.

An independent claim for denial of procedural due process arises only when the state fails to provide an adequate process to remedy legal errors or procedural irregularities. *See Zinermon v. Burch*, 494 U.S. 113, 125–26, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990); *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir.1994) (en banc), *cert. denied*, 115 S.Ct. 898 (1995). As the cases cited by plaintiff underscore, the normal process provided is an appeal and the usual remedy is a new hearing before an impartial decision-maker. The remedy for an unfair hearing, standing alone, is a fair hearing.[4]

■ Plaintiff also argues that the failure of defendant to recuse himself gives rise to an independent substantive due process claim for money damages. Her argument is unpersuasive.

Plaintiff relies on two cases. The first is *Lipson v. Snyder*, 701 F.Supp. 541 (E.D.Pa. 1988). In denying a motion to dismiss a § 1983 claim that defendants had corruptly secured a judgment against the plaintiff in a state court trial, the Court in *Lipson* concluded that there is "at least arguably" a

substantive due process right to a "fair trial." *Id.* at 545. The Court in *Lipson* observed that substantive due process was "a fuzzy concept" and cited *Bello v. Walker*, 840 F.2d 1124, 1129 (3d Cir.1988) for the proposition that "the deliberate and arbitrary abuse of government power violates an individual's right to substantive due process." *Id.* at 544. Plaintiff also relies on *Bello* and the foregoing language from the opinion in that case.

It is clear from subsequent cases, however, that to sustain a § 1983 substantive due process claim, a plaintiff must do more than show a state official deliberately acted in an arbitrary or capricious manner or with some improper motive. She must also show that as a result of such action she was deprived of a fundamental property interest. *See Independent Enterprises v. Pittsburgh Water*, 103 F.3d 1165, 1179 n. 12 (3d Cir.1997) (*Bello* "cannot be understood as affording substantive due process protection from every arbitrary or irrational government action but only for those that deprive the plaintiff of a fundamental property right"); *DeBlasio v. Zoning Bd. Of Adjustment*, 53 F.3d 592, 600 (3d Cir.1995) ("to state a substantive due process claim, a plaintiff must have been deprived of a particular quality of property interest"); *Reich v. Beharry*, 883 F.2d 239, 244 (3d Cir.1989).

Even assuming the right to obtain compensation for tortious conduct is a "fundamental" one, plaintiff has not alleged that Justice Nigro's decision that she had failed to present a sustainable state claim was erroneous. To the contrary, as noted, plaintiff expressly states that her federal constitutional claim is not predicated on a deprivation of any property interest but on a deprivation of a "right to an unbiased judge."

In short, to sustain a § 1983 procedural due process claim for money damages, a plaintiff must show that she was deprived of liberty or property as a result of the proce-

---

**4.** That a party fails to avail herself of procedures established to remedy errors or irregularities does not constitute a deprivation of due process. *See Dykes v. Southeastern Pa. Transp. Authority*, 68 F.3d 1564, 1572 (3d Cir.1995); *Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 682 (3d Cir.1991). Plaintiff never perfected an appeal to the Superior Court from the state court judgment and never timely sought relief from it. *See* 42 Pa.C.S.A. § 5505; *Vanleer v. Lerner*, 384 Pa.Super. 558, 561–62, 559 A.2d 577, 579 (Pa.Super.1989) (30 day limit of § 5505 may be relaxed for equitable reasons); 12 Standard Pennsylvania Practice 2d § 71:55 (1996).

dural irregularities or improprieties of which she complains. To sustain a substantive due process claim, a plaintiff must show, *inter alia*, that as a result she was deprived of a fundamental right.

A plaintiff could conceivably allege an injury accompanying a denial of traditional procedural safeguards which would support a § 1983 procedural due process claim or, if it is of a particular quality, a substantive due process claim. Plaintiff in this action has not done so.[5]

■ Plaintiff points to no case in which a court has held that a judge is constitutionally compelled to recuse himself in a matter in which a litigant's attorney or law firm contributed to the judge's campaign. As the Supreme Court stated in *Aetna Life*, "only in the most extreme of cases would disqualification [for bias] be constitutionally required." *Aetna Life*, 475 U.S. at 821.

Plaintiff states that defendant had a "direct, personal, substantial pecuniary" interest in her state court case of the type the Court in *Aetna Life* found to implicate due process. Baldly stating something in a brief does not make it so.

The type of debilitating interest the Court discussed in *Aetna Life* is one affected by the outcome of the case in which the interested judge is presiding. The state judge in question in *Aetna Life* stood personally to profit substantially from the judicial decision he made and in fact did so. Justice Nigro had no personal pecuniary interest in the outcome of plaintiff's lawsuit, let alone a direct and substantial one. If plaintiff means to suggest that a judge may have such an interest because by ruling in favor of parties represented by contributing attorneys he may encourage further contributions from the bar, it follows that an elected judge can-

not sit in any case unless the attorneys for all parties have made a binding commitment never to contribute to his campaigns.

It is generally understood that "judicial campaigns must focus their solicitations for funds on members of the bar." *Stretton v. Disciplinary Bd. of Sup. Ct. of Pa.*, 944 F.2d 137, 145 (3d Cir.1991). The Court in *Stretton* recognized that as a result "judges preside over cases in which the parties are represented by counsel who have contributed in varying amounts to the judicial campaigns." *Id.* The Court observed that this situation is "unseemly." *Id.* It did not remotely suggest, however, that it was unconstitutional. *See also Collier v. Griffith*, 1992 WL 44893, *6 (Tenn.App. Mar.11, 1992) ("As long as judges must be elected, members of the bar will play active roles in their campaigns and will be a principal source of campaign contributions").

■ A number of high courts for states in which judges are elected have held that a judge is not ethically, let alone constitutionally, required to recuse in cases where a party is represented by an attorney who has contributed to or raised money for the judge's election campaign. *See, e.g., Reems v. St. Joseph's Hosp. and Health Center*, 536 N.W.2d 666, 671 (N.D.1995) (recusal not required where attorney for party was co-chairman of judge's campaign finance committee); *Roe v. Mobile County Appointment Board*, 676 So.2d 1206, 1233 (Ala.1995) (judge not prohibited from sitting on case in which contributing lawyer represents a party); *In re Disqualification of Ney*, 74 Ohio St.3d 1271, 657 N.E.2d 1367, 1368 (1995) (recusal not required where party represented by partner of judge's campaign chairman); *Nathanson v. Korvick*, 577 So.2d 943, 944 (Fla. 1991) (recusal not required where party represented by attorney who contributed to

---

5. The court does not accept defendant's alternative contention that any substantive claim would be time barred. Plaintiff filed this action two years to the day from the date on which Justice Nigro entered the order granting Local Union No. 401's motion for summary judgment. Contrary to plaintiff's assumption, that date is not conclusive. The pertinent date, of course, is the date on which plaintiff knew or, with due diligence, reasonably should have known that Justice Nigro acted in her case after receiving campaign contributions from attorneys in her adversary's law firm. Plaintiff provides no information in that regard. Nevertheless, because it does not clearly appear from the face of the complaint that such date was a day or more prior to the entry of judgment and it is conceivable that the parties first learned the motion would be resolved by Justice Nigro only on or after the day he granted it, this action cannot be dismissed under Rule 12(b)(6) on statute of limitations grounds.

judge's election campaign and served on her campaign committee); *Aguilar v. Anderson,* 855 S.W.2d 799, 802 (Tex.App.1993) (acceptance by judges of campaign contributions from lawyers does not create bias requiring recusal).

The adjudication by judges of cases in which a litigant's lawyer has made campaign contributions to them may, as characterized by the Court in *Stretton,* be "unseemly" and may foster public cynicism. On the other hand, it is the public which supports or tolerates the election of state judges. Pennsylvania is a populous and geographically large state with six media markets. It is unrealistic and unfair to require that judges run for election and then to deride them for accepting the money that is necessary to sustain a campaign from a principal source.

Absent public financing or blind funding of judicial campaigns, that a judge may preside in some cases in which a litigant's attorney contributed to the judge's campaign is an almost inevitable concomitant of the policy decision to elect judges. If a judge must recuse himself whenever a contributing attorney or member of a contributing firm enters an appearance, a candidate who succeeds in attracting contributions from a wide array of lawyers would constantly be recusing himself. *See Roe,* 676 So.2d at 1233 ("If a judge cannot sit on a case in which a contributing lawyer is involved as counsel, judges who have been elected would have to recuse themselves in perhaps a majority of cases filed in their courts").

If questions about campaign contributions and recusal are to be constitutionalized, federal courts will be required to engage in the type of policy making more appropriately undertaken by the pertinent state authorities. What would a mandatory recusal rule encompass? Must an elected judge also recuse himself when a litigant's lawyer declined to contribute to the judge's campaign or contributed to his opponent? May a judge refuse to recuse when it appears that an attorney made a campaign contribution for the purpose of obtaining a recusal?

■ Questions regarding whether or when the receipt by a judge of campaign contributions or support from a litigant's attorney requires recusal should be resolved by the state legislatures, the state authorities responsible for adopting and interpreting codes of judicial conduct or the highest courts in states, like Pennsylvania, which retain ultimate authority to promulgate and enforce rules of conduct and procedure. *See Tumey v. State of Ohio,* 273 U.S. 510, 523, 47 S.Ct. 437, 441, 71 L.Ed. 749 (1927) (questions of judicial disqualification for bias generally left to "legislative discretion"). The receipt of campaign contributions from lawyers for litigants does not present the type of "extreme" case of bias required to implicate the federal constitution. *See Aetna Life,* 475 U.S. at 821.

Moreover, Justice Nigro is immune from suit on any damage claim predicated on his failure to recuse himself or his adjudicating the summary judgment motion in plaintiff's state court case.[6]

■ Judges are immune from suit under § 1983 for judicial actions in matters within their jurisdiction. *Mireles v. Waco,* 502 U.S. 9, 11–12, 112 S.Ct. 286, 287–88, 116 L.Ed.2d 9 (1991). This is so even when they have allegedly acted in a malicious or corrupt manner. *Id.* at 11; *Forrester v. White,* 484 U.S. 219, 227, 108 S.Ct. 538, 544, 98 L.Ed.2d 555 (1988); *Dennis v. Sparks,* 449 U.S. 24, 27–28, 101 S.Ct. 183, 186–87, 66 L.Ed.2d 185 (1980) (state judge immune from suit for allegedly accepting bribe to enter an order); *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967). *See also Kane v. Yung Won Han,* 550 F.Supp. 120, 121–22 (E.D.N.Y.1982) (state judge immune from suit under § 1983 on claim he dismissed plaintiff's state court case in return for

---

6. Judicial immunity may be asserted in a Rule 12(b)(6) motion when its basis is clear from the face of plaintiff's complaint. *See, e.g., Martinez v. Newport Beach City,* 125 F.3d 777, 780 (9th Cir.1997); *Cameron v. Seitz,* 38 F.3d 264, 272 (6th Cir.1994); *Isakson v. First National Bank, Sioux Falls,* 985 F.2d 984, 986 (8th Cir.1993); *Cetenich v. Alden,* 177 F.R.D. 94, 96 (N.D.N.Y. 1998); *Slater v. Jokelson,* 1997 WL 164236, *8 (E.D.Pa. Mar.26, 1997); *Samuel v. Clark,* 1996 WL 448229, *2–*3 (E.D.Pa. Aug.7, 1996); *Lal v. Borough of Kennett Square,* 935 F.Supp. 570, 573–74 (E.D.Pa.1996), *aff'd,* 124 F.3d 187 (3d Cir.1997).

bribe.) If immunity is not defeated by an allegation that a judge was induced to take action by the payment of a bribe, it is surely not defeated by an allegation or implication that he may have been influenced by a campaign contribution.[7]

█] Plaintiff's contention that the failure of a judge to recuse himself is not a "judicial action" is fanciful. Every court to address the question in a reported opinion has readily concluded that a refusal or failure of a judge to recuse himself in a case which he otherwise has jurisdiction to adjudicate is clearly a judicial action for which he is entitled to absolute immunity from suit for damages. *See Callahan v. Rendlen,* 806 F.2d 795, 796 (8th Cir.1986); *Schiff v. Dorsey,* 877 F.Supp. 73, 76 (D.Conn.1994); *Sato v. Plunkett,* 154 F.R.D. 189, 191 (N.D.Ill.1994); *Font v. Dapena Yordan,* 763 F.Supp. 680, 682 (D.P.R. 1991); *Iseley v. Bucks County,* 549 F.Supp. 160, 164–65 (E.D.Pa.1982). *See also Schafer v. Buhl,* 1994 WL 669688, *2 (W.D.Mich. Oct.21, 1994) (decisions regarding recusal are "indisputably" judicial acts); *Kenard v. Nussbaum,* 1988 WL 25240, *2 (S.D.N.Y. Feb.26, 1988).

█] Plaintiff's alternative argument is even more fanciful. Plaintiff purports to read into § 309 of the Federal Courts Improvement Act of 1996 a Congressional intent to delimit the judicial immunity from suit under § 1983 recognized by the Supreme Court for 125 years.[8] Plaintiff points to the language generally exempting judges from liability for costs or attorneys fees in civil rights actions to argue that Congress thus must have contemplated suits such as hers. *See* 42 U.S.C. § 1988(b). This is untenable.

Congress was merely acting in response to the Supreme Court opinion which held that judicial immunity did not preclude an award of costs or fees under § 1988. *See Pulliam*

*v. Allen,* 466 U.S. 522, 544, 104 S.Ct. 1970, 1982, 80 L.Ed.2d 565 (1984). The only civil rights actions against judges for judicial acts within their jurisdiction allowed or contemplated were suits for injunctive or other equitable relief. The Court in *Pulliam* declined to equate an award of costs or fees in such actions with money damages. Thus, Congress was clearly acting to expand judicial immunity and not to truncate it.

Plaintiff has failed to state a cognizable federal constitutional claim. Justice Nigro is immune from suit for damages under § 1983 on any claim predicated on his failure to recuse himself in plaintiff's state court case when serving as a Common Pleas Judge. Accordingly, defendant's motion to dismiss will be granted.[9]

7. Because one of the defendants in *Lipson v. Snyder* was the state judge who allegedly had corruptly entered a judgment, plaintiff suggests the Court at least implicitly concluded that a judge is not immune to suit under § 1983 for depriving a litigant of a fair trial. The Court did not and could not have reached such a conclusion. The defense of judicial immunity was never asserted. The defendant judge had declared bankruptcy and all proceedings as to him had thus been stayed. *See Lipson,* 701 F.Supp. at 542 n. 1.

8. *See Bradley v. Fisher,* 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646 (1871).

9. Defendant's Motion for Imposition of Rule 11 Sanctions on plaintiff's attorney for presenting a "legally frivolous" claim will be addressed in a separate memorandum and order.